

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Hon. Sidney Latham
Secretary of State
Austin, Texas

Dear Sir:

Opinion No. O-5474
Re: What is the proper basis for
computing the franchise tax
of the Wier Long Leaf Lumber
Company, Houston, Texas?

You request the opinion of this department on the question contained in your letter of July 22, quoted below, as follows:

"We solicit your opinion as to the proper basis for computing the franchise tax of the Wier Long Leaf Lumber Company, Houston, Texas.

"The corporation filed its franchise tax report, submitting therewith an affidavit to show that it was in a bona fide state of liquidation, as contemplated in Article 7097, R. C. S. of Texas. The subscribed and paid in capital stock was $1,000,000.00 and the affidavit stipulates that $1,030,000.00 in liquidating dividends was actually paid upon the stock, thereby eliminating the entire amount of capital stock, and paid the minimum franchise tax of $20.00 for the tax year beginning May 1, 1943.

"An examination of the corporation's franchise tax report discloses that it had in excess of $14,000.00 in accounts payable as at the close of business December 3 1942, and $562,714.49 shown as 'To Stockholders upon Final Liquidation'."

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASS'T

"It is our opinion tha  the debts of a corporation entering a state of liquidation must first be paid and any distribution made to the stockholders first charged against surplus balances, and apply the remaining dividends against the outstanding capital stock. If this procedure had been followed, approximately $363,000.00 in outstanding capital stock would have been available for consideration in computing the amount of franchise tax payable.

"In view of the above facts, should this department accept the minimum payment of $20.00 in full satisfaction of the corporation's franchise tax or should we compute the tax upon $362,714.49 shown as due 'To Stockholders upon Final Liquidation'?"

We shall also consider in this connection the letter of Honorable J. L. Lockett, dated July 26, as follows:

"The occasion for this letter is a letter just received from the office of the Secretary of State dated July 24, 1943, copy of which is attached hereto.

"In connection with your consideration of the question submitted to you by the Secretary of State, we would like to have you take into consideration the following facts, affidavit or other verification of which will be furnished to you if so desired:

"Liquidation of Wier Long Leaf Lumber Company had been under consideration, and in fact agreed upon among the stockholders, for months prior to the end of the year 1942. At a meeting of the stockholders held on or about November 14, 1942, liquidation was agreed upon but formal action thereon was not taken because the required prior notice of the meeting had not been given, so that immediately after adjournment of that meeting proper notice was issued for a meeting on December 19, 1942, at which all of the stock outstanding was voted for liquidation and dissolution of the corporation to be effected forthwith. Thereafter, and prior to December 31, 1942, the corporation actually sold and delivered its mill, which had been previously shut down; its logging

operations had been previously discontinued. The entire liquidating distribution of $1,030,000 in cash was paid out after adoption of the resolution for liquidation and dissolution and after sale of the mill, etc. An affidavit in compliance with Revised Statute 7097 showing the corporation was in actual dissolution was filed with the franchise tax report. "

From the information before us, there is no question but that the Wier Long Leaf Lumber Company is in the process of bona fide liquidation, within the purview of Article 7097, V. R. C. S. This being true, the sole question for our determination is, what amount of franchise tax, if any under the law, does the Wier Long Leaf Lumber Company owe under Article 7097, V. P. C. S., reading as follows:

"If a corporation is actually in process of liquidation, such corporation shall only be required to pay a franchise tax calculated upon the difference between the amount of <u>stock actually issued</u> and the amount of <u>liquidating dividends actually paid upon such stock</u>; provided, that the president and secretary of such corporation shall make affidavit as to the total amount of capital stock issued and as to the amount of liquidating dividends actually paid and that such corporation is in an actual bona fide state of liquidation." (Emphasis added)

We deem it helpful in an effort to arrive at a correct answer to this question, to review briefly the enactments of the legislature in regard to franchise taxes levied against corporations. A nominal franchise tax was first imposed upon foreign and domestic corporations in 1895. This statute was amended in 1897.(Acts 25th Legislature, Chapter 104) By the terms of the amendment, a much larger franchise tax was imposed than under the previous acts.

In 1907, (Acts 30th Legislature, First Called Session, Chapter 25, p. 506) by amendment, franchise taxes were again largely increased. In this amendment of 1907, which is a complete franchise tax law, there was first added what is now Article 7097, V. R. C. S., which has remained unchanged in all subsequent revisions and codifications of the franchise tax law.

Insofar as we have been able to ascertain in a careful research, this provision of our statutes has never been judicially construed. The 1907 Act, which first incorporated what is now Article 7097, fixed the franchise tax upon the capital stock issued and outstanding, plus the surplus and undivided profits. This, of course, is a tax upon the right to do business of a going concern. Subsequent revisions and amendments have increased the tax and broadened the base, but Article 7097 has remained unchanged.

When Article 7097 was added, a method was provided for calculating the franchise tax which corporations in the process of liquidation are required to pay. In other words, the statute prescribed a rule or method of calculating the franchise tax due by a corporation in the process of liquidation as distinguished from a going concern, or one doing business. In construing the language of Article 7097, it seems comparatively simple for us to determine what is meant by "the amount of stock actually issued," but it is not so easy to determine what is meant by "the amount of liquidating dividends actually paid upon such stock," the difference between these two constituting the basis upon which a corporation in process of liquidation pays a franchise tax. The term "liquidating dividend" has been judicially defined several times, and with slight variation or in substantial accord with that expressed in the case of Kelly v. Galloway, 66 F. (2d) 878, in the following language:

"As ordinarily understood, a dividend is a dividend even though it is paid out of a surplus; likewise, as ordinarily understood, a liquidating dividend which is paid, incidental to the conclusion of the corporation's life, is not a dividend; it may be merely a return of capital." (Emphasis added)

The case of Gossett v. Commissioner of Internal Revenue, 59 F. (2d) 365, is of some aid in clarifying the distinction between an ordinary dividend paid out of earned surplus and a liquidating dividend paid by a corporation in bona fide process of liquidation. From this case we quote as follows:

"Shortly after t e extraordinarily large 50 per cent. dividend was paid out of the money received for the sale of the corporation. Certainly at the time of the payment of the dividend in question the corporation was not a going concern, in the legal sense, as its dissolution was already under way. It makes no difference what the directors called it when the dividend was declared, nor does the fact that subsequent dividends were termed 'liquidating' dividends when this particular dividend was not so termed alter its character. The question of whether it was a 'partial liquidating dividend' is to be determined, not from what it was called, but by the facts as shown by the record. The record shows that it was a very unusual dividend, and entirely outside of the due course of the business of the corporation.

"The decision of the Commissioner and the Board that it was a 'partial liquidating' dividend was clearly right, and petitioners were properly chargeable in their income tax with the amount of the dividend 'as if they had sold their stock to third persons.'"

Our statutes specifically provide for voluntary dissolution of corporations, Articles 1387, Subdivision 4, 1388 and 1389, V. R. C. S., and the operation of these statutes is discussed in the case of Clayton v. Southwestern Life Insurance Co.,158 S.W. (2d) 820, in the following language:

"The statute (Art. 1387, subd. 4) provides for the voluntary dissolution of a corporation by the written consent of all stockholders, certified to and filed with the Secretary of State; and, in such case (Art. 1388), provides that the president, directors or managers of the affairs of the corporation, at the time of the dissolution, shall be trustees of the creditors and stockholders, 'with power to settle the affairs, collect the outstanding debts, and divide the moneys and other property among the stockholders after paying the debts due and owing by such corporation at the time of its dissolution * * * and for this purpose they may in the name of such corporation, sell, convey and transfer all real and personal property

Hon. Sidney Latham, page 6

belonging to/such company, collect all debts, compromise controversies, maintain or defend judicial proceedings, and exercise full power and authority of said company over such assets and property.'; it being also provided (Art. 1389) that 'The existence of every corporation may be continued for three years after its dissolution from whatever cause, for the purpose of enabling those charged with the duty, to settle up its affairs. ' ` *'

"Construing the several provisions of the statute on the subject of dissolution, we think it obvious that, where a receiver is not appointed, a corporation exists as a legal entity for three years from the filing of the certificate of dissolution with the Secretary of State, unless its affairs are sooner settled, debts paid, and money or other property, if any on hand, divided among the stockholders. Until the three years elapse, or the affairs of the corporation are fully settled, it has a limited or de facto existence for winding-up purposes."

The three year limitation is merely fixed as a measure of sufficient time to allow the dissolving corporation to pay its debts, if any, and divide the money or other property on hand among the stockholders. If these necessary prerequisites of complete dissolution are accomplished prior to the expiration of three years, we see no reason why its existence as a legal entity is not thereby effectively terminated.

We are constrained to the view that Article 7097, supra, prescribes a definite and exclusive basis for the determination of the amount of franchise tax to be paid by a corporation in process of liquidation, and that we should consider it separate and apart from the basis provided by statute for the determination of the amount of franchise tax due by a going concern not in the process of liquidation. This is borne out by an expression found in the case of Ross Amigos Oil Co. v. State, 136 S.W. (2d) 798, (Supreme Court) from which we quote as follows:

"Article 7097 provides the rule or method for calculating the franchise tax which corporations in the process of liquidation shall be required to pay."

Hon. Sidney Latham, page 7

If this view be correct, let us apply it to the facts disclosed in the affidavit filed by the Wier Long Leaf Lumber Company, the corporation in process of liquidation, as required by said article. It is observed that the basis for the determination of the tax involves a process of subtraction, that is, to find the difference between the capital stock actually issued and the amount of liquidating dividends actually paid upon such stock. The capital stock actually issued by the corporation in this case is $1,000,000., which we think constitutes the minuend in the subtracting operation necessary to determine the basis for the tax and the liquidating dividends actually paid upon such tax, $1,050,000, which we think constitutes the subtrahend in this subtracting operation, thus leaving no difference within the purview of the statute upon which the franchise tax is to be calculated against this corporation in liquidation.

We do not think it of any particular moment that there was set up on the books of the corporation the item of $360,714.49 "To stockholders upon final liquidation." This is an asset in legal effect of the stockholders and not of the corporation. Under the authority of Bynum et al. v. Commissioner of Internal Revenue, 113 F. (2d) 1, a corporation is not required to distribute all of the surplus prior to proceeding with distribution of the assets by liquidating dividends. This case holds in effect that where a corporation sold a portion of its assets, and pursuant to resolution to liquidate paid two dividends which were endorsed as liquidating dividends on stock, which had a nominal par value of one dollar, there was a good faith partial liquidation, and the dividends were liquidating dividends from which cost of stock could be deducted in computing stockholders' net income, notwithstanding the corporation retained assets in excess of the nominal par value of the shares of stock. It must be borne in mind that the franchise tax, such as we have in our statutes, is for the privilege of doing business and not for quitting business.

But in order that a corporation which has ceased to do business but has not actually terminated its legal entity, which is accorded the privilege of winding up its affairs, may not escape altogether the burden of taxation, Article 7097, supra, was enacted. Since under this statute in our view in the instant case, liquidation has proceeded to where there is

Hon. Sidney Latham, page 8

no difference between the stock actually issued and the amount of liquidating dividends actually paid on such stock upon which to calculate the tax, the corporation would be subject only to the minimum tax of twenty dollars imposed upon all corporations not otherwise subject to tax.

From the foregoing, it is apparent that we are of the view that the Wier Long Leaf Lumber Company is subject only to the minimum tax of twenty dollars, which it has paid or tendered.

It should be borne in mind that this opinion is intended to apply to the instant case only and to the facts submitted in connection therewith, and should not be taken as applying to any other corporation unless in actual process of a bona fide liquidation, under the same or similar state of facts.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By L. P. Lollar
Assistant

LPL:AMM

SEP 20, 1943

Gerald C. Mann


OPINION COMMITTEE
BY C.E.O.
CHAIRMAN